IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LERESSA WRIGHT,<br><br>      Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, LP; and JOHN DOES NOS 1-10,<br><br>      Defendants. | CIVIL ACTION NO.: 4:20-cv-00077 |

**O R D E R**

This matter is before the Court on Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment. (Doc. 20.) Plaintiff Leressa Wright initially filed this action in the State Court of Chatham County after she tripped and fell while she was shopping at a Wal-Mart store in Chatham County, Georgia.[1] (Doc. 1, pp. 12–14.) Wal-Mart removed the case to this Court, (see generally id.), and, prior to the civil motions deadline, filed its Motion for Summary Judgment, (doc. 20). For the reasons explained more fully below, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Id.)

---

[1] Plaintiff alleges that "Defendant John Does Nos. 1-10" were negligent for, *inter alia*, "failing to provide sufficient warning of the subject dangerous hazard," "failing to remove the dangerous hazard," and "failing to use ordinary care in preventing dangerous hazards that could injure invitees." (Doc. 1, p. 13.)  "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). There is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992)). Here, the Complaint solely states that "Defendant John Does Nos 1-10 were and are "an employee and/or agent" of Wal-Mart and then describes them as "unsafe employee[s]." (Doc. 1, p. 12–13.) Discovery has closed and the real defendant or defendants apparently still cannot be readily identified for service, so the presence of the fictitiously named Defendant John Does are "insufficient to sustain a cause of action." Williams v. DeKalb Cnty. Jail, 638 F. App'x 976, 977 (11th Cir. 2016) (per curiam). Because they are not proper parties to this action, the Court disregards Defendant John Does Nos 1-10 and the claims against them, and will not address them again. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1318 n.4 (11th Cir. 2015).

**BACKGROUND**

I.   **The Incident**

On the afternoon of August 11, 2018, Plaintiff Leressa Wright (hereinafter, "Wright") went grocery shopping with her husband at a Wal-Mart store in Chatham County, Georgia. (Doc. 20-2, p. 5.) Wright estimated that she shopped at this Wal-Mart approximately once a month. (Id.) As Wright was walking through the store, she told her husband that she wanted to purchase some corn on the cob and entered one of the nearby frozen food aisles—aisle two—to look for some. (Id. at pp. 5–6.) Wright stepped briefly into aisle two to peer into a freezer on the left side of the aisle before she turned around and exited the aisle for a few moments. She then re-entered aisle two from the left and took ten steps as she approached the third freezer door on the opposite side of the aisle. (Doc. 20-3, 1:45:34–1:46:09; doc. 20, p. 6; doc. 20-2, pp. 5, 7.) Wal-Mart's surveillance footage shows that Wright then took four steps backwards away from the freezer, lost her footing, and fell backwards.[2] (Doc. 20-3, 1:46:10–1:46:15; see also doc. 20-2, p. 7.) As she was falling, Wright braced herself with both hands "to keep [her] head up from falling and hitting back." (Doc. 20-2, p. 6.) When she hit the ground, she "felt [her] wrist crack," (id.), and she was later diagnosed with a broken left wrist that required surgery, (id. at pp. 14–15).

On the day of the incident, Wright was wearing "platform wedge" shoes with two- to three-inch heels. (Id. at p. 5). She was not, however, wearing her prescription glasses for farsightedness. (Id. at p. 9.) According to Wright, she fell backwards because her left heel got caught in a "groove on the floor" (hereinafter "the groove"). (Id. at pp. 5–6.) Wright described the groove as a dark, "long and cracked up" line that was "deep enough . . . to jam the back of [her] heel . . . [and] go

---

[2] Wright testified that at the time of her fall she was walking "sideways," rather than backwards, "to see if she saw the corn." As Wal-Mart notes, (doc. 20, p. 2), this testimony is inconsistent with the surveillance footage, which clearly shows Wright taking four to five steps straight back away from the freezer, (doc. 20-3, 1:46:10–1:46:15).

2

down in." (Id. at p. 8.) The groove ran the entire length of the aisle, including the general area in front of the third freezer where Wright lost her footing, and it appeared to Wright as if it had "been there for some time." (Doc. 20-4, pp. 1–9; doc. 20-8, p. 4.) Wright admitted, and the surveillance video shows, that she was not looking at the floor as she walked backwards or when she fell. (Doc. 20-2, p. 7; doc. 20-3, 1:46:10–1:46:15.) Furthermore, Wright acknowledged that she walked over the groove without issue when she entered the aisle, and the surveillance footage shows that numerous other patrons did so as well before and after her fall. (Doc. 20-2, p. 7; see generally doc. 20-3.) According to Wright, she did not see the groove because she was "looking straight ahead . . . trying to find some corn," and she walked backwards without looking down because she was "looking at the frozen corn in front of [her]." (Doc. 20-2, p. 7.)

Wright produced nine photographs of the aisle where she fell. (See doc. 20-4.) She testified that the photos were taken by her daughter the same day of the incident, and that one of the photos, which shows a relatively dark horizontal line running through the floor in front of the lower portion of four freezers (one of which is only partially visible), accurately depicts the area where she fell. (Doc. 20-2, pp. 9, 12; see doc. 20-4, p. 3.) The photos do not have dates or time stamps, and many of them are zoomed in on the groove such that the surrounding freezers are barely visible or invisible, making it difficult to orient them to a particular point in the aisle. (See, e.g., doc. 20-4, pp. 4–8; doc. 20-2, pp. 10–12.) Furthermore, based on the Court's review of the photos, it appears that the depth and width of the groove varies considerably at different points of the aisle. The groove is also faintly visible on the surveillance footage, and a male customer who assisted Wright after she fell appears to rub his foot close to or on the precise area of the groove where she tripped. (Doc. 20-3, 1:47:19–1:47:21.)

According to her own testimony, Wright's husband escorted her to customer service after her fall where she spoke with a "worker[] []or supervisor" about the incident. (Doc. 20-2, pp. 12–13.) The employee "asked what happened, and [Wright's husband] took [the employee] straight over and showed her what happened." (Doc. 20-2, p. 12.) When the employee returned, she acknowledged that she saw where Wright fell and asked Wright to fill out an incident report detailing what happened. (Id. at pp. 12–13.) The employee then asked Wright and her husband if Wright wanted an ambulance, and she indicated that she did. (Id. at p. 13.) Wright further testified that, at some point during her time in the employee's presence, she heard the employee say "*they* should have been fixed that."[3] (Id. (emphasis added).)

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v.

---

[3] It bears noting that the portion of the testimony surrounding this statement is ambiguous. After Wright testified to the female employee's statement that "they should have been fixed that," Wal-Mart's counsel asked "[a]nd you don't know who that is?", to which Wright responded, "no, ma'am." (Doc. 20-2, p. 13.) There are at least two plausible interpretations of this exchange. The first is that counsel was asking Wright whether she could identify the employee who made the statement. This interpretation is bolstered by the fact that, just moments earlier, Wright said "I don't know her name." (Id.) Another possibility is that counsel was inquiring about who Wright thought the employee meant had the responsibility to fix the groove in the tile floor. The fact that that the meaning of the statement is unclear and there are two potential interpretations, however, does not impact the Court's summary judgment analysis or its determination that summary judgment should be granted in favor of Wal-Mart.

4

Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

Wright alleges that Wal-Mart was negligent "by failing to provide sufficient warning of the subject dangerous hazard, by failing to remove the dangerous hazard, [and] by failing to

remedy the dangerous hazard."[4]  (Doc. 1, pp. 12–13.)  Wal-Mart argues that it is entitled to summary judgment because: (1) Wright failed to meet her initial burden of proving that Wal-Mart knew (and thus had superior knowledge) that the groove constituted a hazardous condition; (2) Wright possessed equal or superior knowledge regarding the groove; and (3) Wright proximately caused her fall (and, therefore, her injuries) by failing to exercise ordinary care for her own safety. (Doc. 20, pp. 6–11.)

### I.   Applicable Law

To prevail on a cause of action for negligence under Georgia law, a plaintiff must establish the essential elements of duty, breach of duty, proximate causation and damages.  Black v. Ga. S. & Fla. Ry. Co., 415 S.E.2d 705, 707 (Ga. Ct. App. 1992).  Under Georgia law, the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe.  O.C.G.A. § 51-3-1.  "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises."  Robinson v. Kroger Co., 493 S.E.2d 403, 408–09 (Ga. 1997).

In Georgia, "proof of a fall, without more, does not give rise to liability on the part of a proprietor."  All Am. Quality Foods v. Smith, 797 S.E.2d 259, 261 (Ga. Ct. App. 2017) (citing Ingles Mkts, Inc. v Carroll, 765 S.E.2d 45 (Ga. Ct. App. 2014)).  "To support a premises liability

---

[4] Wright also alleges that Wal-Mart was negligent "by hiring and retaining an unsafe employee(s), to wit: Defendant John Does Nos. 1-10." (Doc. 1, p. 12–13.)  This is not a cognizable claim.  In Georgia, "[t]he analysis for a cause of action for negligent retention is essentially the same as the analysis for vicarious liability."  Chambers v. Wal-Mart Stores, Inc., 70 F. Supp. 2d 1311, 1322 (N.D. Ga. 1998), aff'd, 193 F.3d 523 (11th Cir. 1999).  Before statutory vicarious liability under O.C.G.A. § 51–2–2 can be imposed on an employer for the acts of an employee, "there must be evidence of the commission of a tort by the employee sufficient to survive summary judgment."  Kaiser v. Tara Ford, Inc., 546 S.E.2d 861, 867 (Ga Ct. App. 2001).  Here, Wright has failed to identify any of the John Doe defendant-employees, much less articulate any specific act or omission by any of them sufficient to survive summary judgment.  Thus, this Court will disregard Wright's negligent hiring and retention claims.

claim, a plaintiff must show that the proprietor had superior knowledge—either actual or constructive—of the hazard that caused the plaintiff's injury." Hartman v. Clark, 801 S.E.2d 66, 67 (Ga. Ct. App. 2017); see also Rentz v. Prince of Albany, Inc., 797 S.E.2d 254, 256 (Ga Ct. App. 2017) ("The true ground of liability [in premises liability cases] is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property."). Thus, if the owner had no actual or constructive knowledge of the hazard, the owner is entitled to summary judgment. Drew v. Istar Fin., Inc., 661 S.E.2d 686, 689 (Ga. Ct. App. 2008).

Georgia courts have created some nuance in trip and fall cases involving "static" defects or conditions (as opposed to temporary hazards caused by spilled liquids or fallen objects). "A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." Thomas v. Exec. Comm. of Baptist Convention of State, 585 S.E.2d 217, 220 (Ga. Ct. App. 2003). Here, the groove was a crack or seam in Wal-Mart's tile floor, and thus constituted a static condition. See Muskett v. Sketchley Cleaners, Inc., 677 S.E.2d 731, 734 (Ga Ct. App. 2009) ("Small cracks, holes, and uneven spots in pavement are considered static defects.").

"[I]n cases involving static conditions, if the invitee knows of the condition, the proprietor has no duty to warn the invitee and *no liability for resulting injury to the invitee*; the invitee knows as much as the proprietor does. By acting, the invitee assumes the attendant risks." Poythress v. Savannah Airport Comm'n, 494 S.E.2d 76, 79 (Ga Ct. App. 1997) (emphasis added).

## II. Whether Wright and Wal-Mart Had Equal Knowledge of the Static Condition

Wal-Mart's primary, overarching argument is that the undisputed evidence shows that Wright had knowledge of the groove's existence that was equal to Wal-Mart's own, and thus she cannot show, as she must, that Wal-Mart had superior knowledge and negligently failed to warn and protect her. (Doc. 20.) Specifically, Wal-Mart argues that the crack was a clearly visible,

7

unobstructed "static condition" which Wright successfully traversed moments before she tripped. (Id. at pp. 6, 8–10.)

Knowledge of a static condition can be presumed "when an invitee has previously successfully traversed the area." Poythress, 494 S.E.2d at 79; see also Sherrod v. Triple Play Cafe, LLC, 647 S.E.2d 376, 378 (Ga Ct. App. 2007) (plaintiff was presumed to have knowledge of the transition of one type of flooring surface (astroturf) to another (a raised rubber mat)—a static condition—because she successfully traversed it five minutes prior to her fall); Dickman v. S. City Mgmt., Inc., 494 S.E.2d 64, 65–66 (Ga. Ct. App. 1997) (summary judgment appropriate where, "after dinner," the plaintiff "twisted her foot and fell, breaking her ankle" when "her left high heel allegedly became caught or pushed through a brick or loose mortar" on "the same staircase on which she had entered" the restaurant because, "[e]ven assuming arguendo that the step was defective, [plaintiff]'s admission that she traversed the same area using the same staircase shortly before she fell, is fatal to her claim as she cannot show [defendant]'s superior knowledge"). However, this presumption will only arise if the static condition "is readily discernible to a person exercising reasonable care for his own safety," Perkins v. Val D'Aosta Co., 699 S.E.2d 380, 383 (Ga. Ct. App. 2010) (quotation and citation omitted), and "where there is nothing to obstruct or interfere with [the invitee's] ability to see [the] 'static' defect," Thomas, 585 S.E.2d at 219 (quotation and citation omitted). See also D'Elia v. Phillips Edison & Co., 839 S.E.2d 721, 724 (Ga. Ct. App. 2020) ("[I]f nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks.") (quoting Rentz v. Prince of Albany, 797 S.E.2d 254, 257 (Ga. Ct. App. 2017)); City of Brunswick v. Smith, 829 S.E.2d 781, 784 (Ga. Ct. App. 2019) ("In cases involving a static condition, . . . a

8

plaintiff is held to have knowledge of an open and obvious condition.") (quotations and citation omitted).

Wright argues that "whether [her] prior traversal in the area of the fall put [her] on notice of the hazard is an issue best left to a trier of fact." (Doc. 24-1, p. 7–8.) For support, she cites Ellington v. Tolar Construction Company, a case in which the Supreme Court of Georgia said that "issues of . . . contributory negligence and lack of ordinary care for one's own safety are not susceptible [to] summary adjudication," 227 S.E.2d. 336, 338 (Ga. 1976). This argument is unpersuasive, however, because, as the Ellington court proceeded to acknowledge, summary judgment on such issues is entirely appropriate "where the evidence is plain, palpable and undisputable." Id. This is consistent with the case law discussed above, which indicates that summary judgment has routinely been deemed appropriate where the facts plainly and palpably show that: (1) the invitee previously traversed the condition that caused the fall; (2) the condition was readily discernible to a person exercising ordinary care; and (3) nothing obstructed the invitee's view of it. See Perkins, 699 S.E.2d at 382–83; Thomas, 585 S.E.2d at 219.

Here, just seconds before she fell, Wright walked over the very groove which caused her to trip and, prior to that, she had walked within feet of the groove when she first ventured briefly down the aisle approximately thirty seconds before she fell. Additionally, Wright's testimony and the photos she produced indicate that the groove was readily discernible to a person exercising ordinary care. Indeed, Wright established during her deposition that the groove was visible (describing it as "long and cracked up and deep," (doc. 20-2, p. 8)), and in her Response she argues that "the nature and character of [the groove] . . . [indicate that it] is not one that popped up just prior to the Plaintiff's arrival," and that it was "more than just a trifling static defect," (doc. 24-1, p. 6). Wal-Mart does not dispute that the groove was noticeable. See Jeter v. Edwards, 349 S.E.2d

9

28, 28 (Ga. Ct. App. 1986) (affirming grant of summary judgment because it was undisputed that the static condition was "clearly visible if one but looks at it").

Additionally, Plaintiff does not contend (and the surveillance footage does not indicate) that the aisle was poorly lit making it difficult to observe the groove. Compare Pinkney v. VMS Realty, 375 S.E.2d 90, 92 (Ga. Ct. App. 1988) (holding that factual dispute precluded summary judgment where poor lighting may have obscured the static condition), with Crenshaw v. Hogan, 416 S.E.2d 147, 148 (Ga. Ct. App. 1992) (affirming summary judgment in trip and fall case because broad daylight made the static condition "so open and obvious"). She does, however, weakly argue that, "[b]ecause of the general unkept nature of [Wal-Mart's] sales floor, including dark foreign material on the tile and in the immediate area of the groove, it is possible that such a hazard would not stand out and be difficult to see." (Doc. 24-1, p. 7.) This argument—which, noticeably hedges by using the phrase "it is possible" and stops short of asserting that the hazard actually did not stand out and was difficult to see—misses the mark because, as Wal-Mart notes, Wright has provided no evidence whatsoever tending to show that Wal-Mart's floors were "generally unkept," or that there was some "dark foreign material" on the tile. There is no evidence suggesting that Wright's view of the groove was obstructed. To the contrary, the surveillance footage plainly shows that no one was in front of or near Wright as she entered the aisle and that she had a clear view of the floor—and, therefore, the groove. (See doc. 20-3, 1:46:04–1:46:08.) Wright explicitly testified that she "had no problem walking to the [freezer] door," and she took a direct path over the groove to get there.[5] (Doc. 20-2, p. 7.)   In sum, the undisputed evidence

---

[5] Without expressing any opinion as to whether Wright failed to exercise ordinary care, the Court notes that, to the extent Wright claims she personally did not see or appreciate the groove on the floor, the evidence suggests that Wright's own behavior may have been the culprit. Wright, who is farsighted, was not wearing her prescription glasses on the day she fell, and she tripped while walking backwards and not looking at the ground.

plainly and palpably shows that the groove was a readily discernible, unobstructed static condition that Wright successfully negotiated before she fell.  Accordingly, Wright's knowledge of the crack is at least equal to that of Wal-Mart.  As a result, Wal-Mart is entitled to summary judgment.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Wal-Mart's Motion for Summary Judgment. (Doc. 20.)  The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant and to **CLOSE** this case.

**SO ORDERED**, this 29th day of September, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA